UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KOW NAI S.,[1]<br><br>   Plaintiff,<br><br> v.<br><br>MARTIN O'MALLEY,<br><br>   Defendant. | Case No. 24-cv-03289-DMR<br><br>**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 11, 12 |

   Plaintiff Kow Nai S. moves for summary judgment to reverse the Commissioner of the Social Security Administration's (the "Commissioner's") final administrative decision regarding Plaintiff's disability onset date under Title II of the Social Security Act, 42 U.S.C. § 401 et seq. [Docket No. 11.] The Commissioner cross-moves to affirm. [Docket No. 12.] For the reasons stated below, the court grants Plaintiff's motion, denies the Commissioner's motion, and remands the case for further proceedings consistent with this order.

**I. PROCEDURAL HISTORY**

   Plaintiff filed an application for Social Security Disability Insurance ("SSDI") benefits on September 14, 2015, alleging disability beginning October 2, 2012. Administrative Record ("AR") 161-63. An Administrative Law Judge ("ALJ") held a hearing on March 30, 2018 and issued an unfavorable decision on August 17, 2018. AR 12-25. Plaintiff appealed, and on November 2, 2020, this court issued an order remanding the matter to the agency for further proceedings. AR 606-16; Case No. 19-cv-04396-DMR, Docket No. 24. On remand, a different ALJ held a hearing on December 16, 2021 and issued a partially favorable decision on March 1, 2022 finding that Plaintiff was disabled as of November 1, 2015, but not before that date. AR

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

1503-20. Plaintiff appealed the decision regarding the time period from his alleged onset date of October 2, 2012 through October 31, 2015. On September 14, 2022, this court granted a stipulated remand to the agency for further proceedings. AR 1527-29; Case No. 22-cv-03410-DMR, Docket No. 16. On October 5, 2022, the Appeals Council remanded the case to the ALJ with instructions. AR 1532-34.

The ALJ held a new hearing on October 13, 2023 and issued a decision on February 6, 2024 finding that Plaintiff was not disabled for the time period from October 2, 2012 through October 31, 2015. AR 1465-76. The ALJ found that during that time period Plaintiff had the following severe impairments: bilateral shoulder impairment; lumbar spine disorder; right carpal tunnel syndrome status post release; and right wrist arthroscopy. AR 1470. The ALJ determined that Plaintiff had the following residual functional capacity ("RFC"):

> [Plaintiff could] perform light work as defined in 20 CFR 404.1567(b) except he could lift/carry 20 pounds occasionally and 10 pounds frequently and sit, walk, or sit 6 hours each in an 8-hour workday. He could push/pull as much as he could lift/carry. The claimant could occasionally climb ladders, ropes, or scaffolds. He could frequently balance, stoop, kneel, crouch, or crawl. He could frequently reach overhead bilaterally. With the right upper extremity, the claimant could frequently handle, finger, and feel, but not continuously for more than one hour without a five-minute break.

AR 1471.

Relying on the opinion of a vocational expert ("VE"), the ALJ determined that Plaintiff could perform jobs existing in the economy, including garment sorter, mail sorter, and housekeeper. Therefore, the ALJ concluded that Plaintiff was not disabled from October 2, 2012 through October 31, 2015. AR 1475.

After the Appeals Council denied review, Plaintiff sought review in this court. [Docket No. 1.]

## II. ISSUES FOR REVIEW

1. Was the ALJ's RFC finding supported by substantial evidence?
2. Was the ALJ's Step Five finding supported by substantial evidence?

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the district court has the authority to review a decision by

2

the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a mere scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir.1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation and quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

## IV. DISCUSSION

### A. The ALJ's Credibility Determination and RFC Finding

Plaintiff argues that the ALJ erred in his RFC determination because he improperly rejected Plaintiff's symptom testimony.

#### 1. Legal Standard

In general, credibility determinations are the province of the ALJ. "It is the ALJ's role to resolve evidentiary conflicts. If there is more than one rational interpretation of the evidence, the ALJ's conclusion must be upheld." *Allen v. Sec'y of Health & Human Servs.*, 726 F.2d 1470, 1473 (9th Cir. 1984) (citations omitted). An ALJ is not "required to believe every allegation of disabling pain" or other nonexertional impairment. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989) (citing 42 U.S.C. § 423(d)(5)(A)). However, if an ALJ discredits a claimant's subjective symptom testimony, the ALJ must articulate specific reasons for doing so. *Greger v.*

1  *Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006).  In evaluating a claimant's credibility, the ALJ

2  cannot rely on general findings, but "must specifically identify what testimony is credible and

3  what evidence undermines the claimant's complaints." *Id*. at 972 (quotations omitted); *see also*

4  *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (stating that an ALJ must articulate

5  reasons that are "sufficiently specific to permit the court to conclude that the ALJ did not

6  arbitrarily discredit claimant's testimony").  The ALJ may consider "ordinary techniques of

7  credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in

8  testimony, and may also consider a claimant's daily activities, and "unexplained or inadequately

9  explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen v.*

10  *Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

11        The determination of whether or not to accept a claimant's testimony regarding subjective

12  symptoms requires a two-step analysis.  20 C.F.R. § 404.1529; *Smolen*, 80 F.3d at 1281 (citations

13  omitted).  First, the ALJ must determine whether or not there is a medically determinable

14  impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §

15  404.1529(b); *Smolen*, 80 F.3d at 1281-82.  Once a claimant produces medical evidence of an

16  underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of

17  symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged

18  severity of" the symptoms.  *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc)

19  (citation omitted).  Absent affirmative evidence that the claimant is malingering, the ALJ must

20  provide "specific, clear and convincing" reasons for rejecting the claimant's testimony.  *Vasquez*

21  *v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  The Ninth Circuit has reaffirmed the "specific, clear

22  and convincing" standard applicable to review of an ALJ's decision to reject a claimant's

23  testimony.  *See Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014).

24        **2.**    **Analysis**

25        The ALJ found that Plaintiff's "medically determinable impairment could reasonably be

26  expected to cause the alleged symptoms; however, [his] statements concerning the intensity,

27  persistence and limiting effects of these symptoms are not entirely consistent with the medical

28  evidence and other evidence in the record for the reasons explained in this decision." AR 1472.

4

1    As the ALJ determined that Plaintiff was not malingering, the ALJ must provide "specific, clear
2    and convincing" reasons for rejecting the claimant's testimony. "This requires the ALJ to
3    'specifically identify the testimony [from a claimant] she or he finds not to be credible and . . .
4    explain what evidence undermines that testimony.'" *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th
5    Cir. 2020) (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir.
6    2014)). "[T]he 'clear and convincing' standard requires an ALJ to show his work." *Smartt v.
7    Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). As explained below, the ALJ did not provide specific,
8    clear and convincing reasons for rejecting Plaintiff's testimony.

9    The ALJ's order began by reviewing the medical records. Plaintiff had sustained a work-
10   related injury at some point before 2012. AR 1472. A July 3, 2012 MRI indicated that Plaintiff
11   had "moderate ACJ arthritis, moderate subacromial/subdeltoid bursitis, tendinosis and small
12   articular surface partial thickness insertional tear supraspinatus tendons, and degenerative type
13   changes in the labrum." *Id.* (citing AR 468). In September 2012, providers noted that a cortisone
14   injection was effective for only one month. *Id.* Plaintiff received surgery to his right shoulder in
15   November 2012. *Id.* (citing AR 346-61). Plaintiff then attended post operative physical therapy.
16   *Id.* (citing AR 387-91). Plaintiff was also diagnosed with right carpal tunnel syndrome and
17   received surgery to his right wrist in May 2013. *Id.* (citing AR 309-23). Plaintiff received surgery
18   to his left shoulder in December 2013. *Id.* (citing AR 275-88). Plaintiff also reported a history of
19   intermittent low back pain in treatment notes from September 2012 and December 2013. AR
20   1472-73 (citing AR 281, 467). A January 7, 2014 MRI indicated that Plaintiff had moderate
21   spondylitic changes primarily at L4-5; and moderate to marked central canal narrowing at L4-5
22   due to disc bulges, facet joint arthropathy, ligamentum flavum hypertrophic changes, and very
23   minimal degenerative-type anterolisthesis. *Id.* (citing AR 449-50). The ALJ noted that Plaintiff
24   received physical therapy for his lower back in February and March 2014. AR 1473 (citing AR
25   436-439). The ALJ also noted that his back impairment did not progress to the point of needing
26   surgery until 2021. *Id.*

27   The ALJ determined that Plaintiff's "shoulder, back, and wrist symptoms became
28   manageable in 2014, as there are no treatment records from April 2014 through July 2015 that

5

might illustrate any acute complaints." AR 1473. In the same paragraph, the ALJ cited a treatment note from August 10, 2015 where Plaintiff reported that he had lower back pain since 2012; that physical therapy had not helped him; and that he used over the counter NSAIDs to treat pain symptoms. *Id.* (citing AR 471). A physical exam also showed decreased range of motion in the spine, as well as "tenderness in L3-S1 paraspinal muscles" and "soft round mobile mass on subcutaneous area at L3-4." *Id.* (citing AR 472).

After discussing the physicians' opinions in the record, the ALJ then concluded that Plaintiff's assertions were "credible but only to the extent consistent with the residual functional capacity." AR 1474. With regard to Plaintiff's reports of numbness, pain, and weakness in the hands, the ALJ stated: "progress notes do not show persistent hand complaints after the May 2013 release procedure. Physical examinations fail to show any strength or sensory deficits affecting the upper extremities." AR 1474. With regard to Plaintiff's reports of foot numbness, the ALJ stated:

> Imaging studies revealed no nerve impingement. Physical examinations showed no neurologic deficits in the lower extremities. In October 2015, the claimant reported that he was able walk about a mile before needing to rest (Exhibit 4E/3).[2] In November 2015, he was capable of playing takraw (Exhibit 4F/3).[3] While the Appeals Council noted that the claimant did not identify of the frequency with which he played takraw, the ability to engage any recreational sports activity that requires jumping and kicking remains probative during the period at-issue.

AR 1474.

Plaintiff argues that the ALJ improperly discounted Plaintiff's testimony of his symptoms. For example, at the March 30, 2018 hearing, Plaintiff testified that he could not use chopsticks in his right hand without dropping them due to the pain. AR 59.[4] He testified that he could not lift

---

[2] The ALJ cited Plaintiff's October 12, 2015 exertion questionnaire. AR 200-202.

[3] The ALJ cited an internal medicine evaluation from May 25, 2016 completed by consultative examiner Vivekanand Jain, MD. AR 453-455. Plaintiff reported to Dr. Jain that he began having lower back problems in November 2015 after he played takraw (a sport played by kicking a ball over a net). AR 453.

[4] At the December 16, 2021 hearing, Plaintiff testified that he was now able to use chopsticks to eat, but still could not lift anything heavy. AR 548-549. At the October 13, 2023 hearing, Plaintiff testified that his wrist pain was worse during the October 2, 2012 through October 31,

6

objects such as a gallon of milk with his right hand without using his other hand as support. AR 60. He could not pick up coins from a table with his fingers. AR 61. He also testified that he could not stand for more than about ten minutes before his feet would go numb, and then he would have to sit and rest for a few minutes. AR 64. At the October 13, 2023 hearing, Plaintiff testified that for the time period from October 2, 2012 through October 31, 2015, he could not sit for more than about 30 minutes before needing to stand for five to ten minutes due to back pain. AR 1493-94. In his previous job in the jewelry industry,[5] Plaintiff testified that he needed to take frequent breaks due to hand pain, sometimes once every ten to fifteen minutes. AR 1494-95.

      The ALJ did not provide specific, clear and convincing reasons for finding that Plaintiff's overall pain "became manageable in 2014." AR 1473. There was a gap of about a year in the medical records between Plaintiff's last therapy session for his shoulder and back pain in March 2014, and his next treatment note in August 2015. AR 430; 471. Based on this gap, the ALJ apparently concluded that Plaintiff's pain "became" manageable after his three surgeries in 2012-2013. However, the ALJ ignores the fact that Plaintiff's last physical therapy assessment regarding his right shoulder on March 27, 2014 clearly indicated that Plaintiff still had right shoulder pain at a level of 9/10 despite having undergone right shoulder surgery in November 2012 and twice-weekly therapy sessions from November 2012 to January 2013 and again from January 2014 to March 2014. AR 400. His last physical therapy assessment for his lower back pain on March 27, 2014 also indicated that Plaintiff still had "lower back pain at 8/10 after sitting for any length of time" despite having undergone six therapy sessions since February 2014. AR 437. In the next available medical record on August 10, 2015, Plaintiff reported that he had persistent lower back pain since 2012 and that neither physical therapy nor medication had improved his symptoms. AR 471. In light of this record evidence, the ALJ's reasons for concluding that Plaintiff's symptoms "became manageable" from 2014 to 2015, despite the medical record indicating that various treatments up to and including surgery were ineffective to

---

2015 time period. AR 1490-91.

[5] Plaintiff's previous job in the jewelry industry required him to hold a clipper and twist it. This would cause him sharp pain in his righthand wrist. Plaintiff is righthanded. AR 1492-93. He was let go from his previous job in October of 2012 because of his medical issues. AR 548, 1490.

7

address his pain, are not clear and convincing.

Turning to the ALJ's decision to discount Plaintiff's testimony regarding complaints about his hands, the ALJ noted that physical examinations failed to show any strength or sensory deficits affecting the upper extremities. AR 1474. For example, the ALJ noted that Dr. Jain found no strength deficits affecting the extremities in her May 2016 physical exam of Plaintiff. AR 1473 (citing AR 455). To the extent Plaintiff testified about muscular weakness in the hands, the ALJ did not err in finding that this testimony conflicted with the medical record. However, Plaintiff also described his wrist limitations as due to pain, not due to a strength deficiency. For example, Plaintiff explained that he could hold objects for a little bit, but that "sometimes I get a sharp tingling pain sensation and then it makes me . . . drop the items." AR 1491. Plaintiff also testified in 2018 that he experienced a "throbbing pain" in his wrist about once a week, and that he then wore a Bengay brace on his wrist for a couple hours until the pain went away. AR 58-59. Plaintiff's testimony that he had wrist pain for several hours once a week and sporadic pain when manipulating objects such as chopsticks or holding heavy objects such as a gallon of milk is not inconsistent with Dr. Jain's findings cited by the ALJ. To the extent the ALJ discounted Plaintiff's wrist pain testimony because of Dr. Jain's examination, the ALJ erred.

The ALJ also stated that in progress notes, Plaintiff did not complain of persistent wrist pain after the May 2013 wrist surgery. AR 1474. From this, the ALJ appeared to conclude that the surgery was successful in reducing Plaintiff's wrist pain such that his symptoms were consistent with the assessed RFC of being able to frequently handle, finger, and feel, but not continuously for more than one hour without a five-minute break. "[U]nexplained or inadequately explained failure to seek treatment" may be considered when assessing a plaintiff's credibility. *Smolen*, 80 F.3d at 1284. However, in making this finding, the ALJ failed to consider significant record evidence about Plaintiff's previous attempts to seek treatment for his wrist. Plaintiff testified his wrist pain symptoms began in 2000. AR 59. He had two surgeries for his right wrist, one in 2000 and one in 2013. AR 58. Plaintiff testified that the surgery in 2000 did not help his pain, and that he underwent the 2013 surgery because his hand was numbing. AR 59. Plaintiff explained that the 2013 surgery was successful in eliminating the numbness, but he still had pain

8

afterwards. AR 1491-92. He testified that his doctor told him that they had done all they could to help him. AR 1492. The ALJ did not provide a clear and convincing explanation why, in light of this medical background, Plaintiff's failure to make further complaints about his wrist after March 2013 indicated that his wrist pain had been resolved.

Regarding Plaintiff's complaints of "foot numbness," the court finds that the ALJ met the clear and convincing standard for discounting Plaintiff's testimony. AR 1474. The ALJ cited the lack of medical records showing nerve impingement or neurologic deficits in the relevant time period. The lack of corroborating medical records by itself is not clear and convincing evidence. *See Ferguson v. O'Malley*, 95 F.4th 1194, 1201 (9th Cir. 2024) (holding that the ALJ "cannot rely on an *absence* of positive medical evidence to discredit a claimant's subjective symptom testimony"). However, the ALJ also noted that Plaintiff reported in October 2015 that he was able to walk for about a mile before needing to rest, and that he played takraw on at least one occasion in November 2015.

Plaintiff's reported physical activities in 2015 conflict with Plaintiff's March 30, 2018 testimony that he could not stand more than ten minutes without both of his feet going numb, causing him to fall. AR 61. They also conflict with Plaintiff's December 16, 2021 testimony that due to the numbness in his feet, he could not walk without frequent resting. AR 550.[6] The court notes that there is no record of Plaintiff complaining of foot numbness before November 2015, even though there are records from before November 2015 about his back pain. The court also notes that there is substantial evidence in the record that Plaintiff's back symptoms were exacerbated after he played takraw in November 2015. AR 453. The court finds that the ALJ has met the clear and convincing standard for discounting Plaintiff's testimony about foot numbness prior to November 2015.

Nevertheless, because the ALJ improperly discredited Plaintiff's testimony about his wrist, shoulder, and back pain, the court finds that the ALJ erred in his RFC finding. If Plaintiff's pain testimony was credited, the RFC could be more limited, such as occasional handling rather than

---

[6] The court notes that Plaintiff was not being specifically asked about the October 2, 2012 through October 31, 2015 time period when he made these statements.

1  frequent handling. At the December 16, 2021 hearing, the VE opined that if Plaintiff were limited
2  to only occasional handling, he would be precluded from all three occupations relied on by the
3  ALJ in his finding that Plaintiff was not disabled. AR 562. Likewise, at the March 30, 2018
4  hearing, the VE opined that if Plaintiff had to rest for three minutes after every hour of standing or
5  walking, had to rest for five minutes after every hour of sitting, and was limited to occasional
6  handling and fingering, Plaintiff would not be able to perform any jobs in the national economy.
7  AR 71-72. The ALJ's error was therefore not harmless. *See Carmickle v. Comm'r, Soc. Sec.*
8  *Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

### B. The ALJ's Step Five Finding

Plaintiff argues that the ALJ erred in his step five analysis. The court finds that the ALJ's step five finding turned in large part on his determination of Plaintiff's credibility and RFC, and so the ALJ erred in his step five analysis for the same reasons as above.

### C. Remedy

Plaintiff argues that the court should reverse the decision of the Commissioner and remand with instructions to award benefits for the period from October 2, 2012 through October 31, 2015. Mot. 22. Plaintiff contends that the ALJ should have credited Plaintiff's testimony, and if the ALJ did so, Plaintiff would have been found disabled.

"When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). However, under the "credit-as-true" rule, the court may grant a direct award of benefits if three conditions are satisfied. *Id.* The first condition is that the "ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion." *Washington v. Kijakazi*, 72 F.4th 1029, 1041 (9th Cir. 2023) (citing *Treichler*, 775 F.3d at 1100–01). Second, the court must determine "whether the record has been fully developed, whether there are outstanding issues that must be resolved before a determination of disability can be made, and whether further administrative proceedings would be useful." *Id.* (citing *Treichler*, 775 F.3d at 1101). And third, if "no outstanding issues remain and further proceedings would not be useful," the court has discretion to find the "relevant testimony

credible as a matter of law." *Id.* (citing *Treichler*, 775 F.3d at 1101).

For reasons explained above, the court finds that the first condition of the credit-as-true rule is satisfied. The ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's subjective pain testimony.

However, the court finds that the second condition of the credit-as-true rule is not satisfied. Even if Plaintiff's pain testimony were taken as credible, there would still be outstanding issues to be resolved. For example, it is unclear if Plaintiff's wrist symptoms would have limited him to only occasional handling, or if Plaintiff would have been able to do some other level of handling. It is also unclear if the RFC would need to be modified in some other way to accommodate Plaintiff's shoulder and back symptoms, and it is unclear how this would affect the step five analysis. This case is distinguishable from cases such as *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004), where it was undisputed that if the claimant's subjective testimony were credited, the claimant was entitled to award of benefits. Here, the record is still ambiguous on that point.

The court finds that remand for further proceedings is appropriate. On remand, the ALJ shall reconsider Plaintiff's subjective pain testimony and, if necessary, complete the record on the RFC and step five analyses.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted. The case is remanded for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

Dated: September 29, 2025

Donna M. Ryu
Chief Magistrate Judge

11